UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:
TOUGHER INDUSTRIES, INC.,

                Debtor.

Chapter 7
Case No. 06-12960
(Main Case)

(Jointly Administered)

In re:
TOUGHER MECHANICAL, INC.,

                Debtor.

Chapter 7
Case No. 07-10022

APPEARANCES:

Couch White, LLP
*Attorneys for Tougher Industries Enterprises, LLC
and Tougher Mechanical Enterprises, LLC*
540 Broadway
P.O. Box 22222
Albany, New York 12201

Jeremy Smith, Esq.

Eric T. Schneiderman, Esq.
Attorney General for the State of New York
*Attorney for the New York State
Department of Labor*
120 Broadway, 26th Floor
New York, New York 10271

Steven Koton, Esq.
Patricia Kakalec, Esq.

Hon. Robert E. Littlefield, Jr., Chief States Bankruptcy Judge

### MEMORANDUM-DECISION AND ORDER

The purchasers of the debtors' assets filed motions to clarify that the language in the "free and clear" sale order relieved them of the debtors' experience ratings as successor employers for purposes of calculating their unemployment insurance tax liabilities. The court granted the relief by orders entered February 24, 2010 and August 2, 2010 (the "Clarification Orders"). Presently

1

before the court is a motion by the State of New York Department of Labor ("DoL") pursuant to Federal Rule of Bankruptcy Procedure 9024 and Rule 60(b) of the Federal Rules of Civil Procedure for reconsideration of the Clarifying Orders.

## Facts

Tougher Industries, Inc. filed a Chapter 11 petition on November 3, 2006. On November 22, 2006, upon motion of the United States Trustee, the court entered an order pursuant to § 1104 appointing Lee Woodard, Esq. Chapter 11 Trustee ("Trustee"). Tougher Mechanical, Inc. filed a voluntary petition for relief under Chapter 11 on January 3, 2007. An order was entered March 6, 2007, providing for the joint administration of the bankruptcy cases of Tougher Industries, Inc. and Tougher Mechanical, Inc. (collectively "Debtors") in accordance with Federal Rule of Bankruptcy Procedure 1015(b). The Debtors operated a facility that designed and installed commercial and industrial heating, ventilation, and air conditioning systems, and provided services related to these operations.

The DoL filed a priority claim in the amount of $160,629.17 for unemployment insurance taxes incurred by Tougher Industries, Inc. for the first quarter of 2006 through the fourth quarter of 2006. (Case No. 06-12960, Claim No. 282.) The Debtors have no other outstanding liabilities owed to the DoL.

On June 14, 2010, the court issued an order converting the Debtors' cases from Chapter 11 to 7. Prior to the conversions, the Trustee sold substantially all of the Debtors' assets outside the ordinary course of business pursuant to § 363(b)(1) and (f) to Tougher Industries Enterprises, LLC ("TIE") and Tougher Mechanical Enterprises, LLC ("TME").

The order authorizing the sale was entered on November 20, 2007. (Order Approving

2

Sale of Debtors' Assets (the "Sale Order"), ECF No. 356.) Among the findings made by the court in the Sale Order were:

> The Trustee may sell the Assets free and clear of all liens, claims and encumbrances because, in each case, one or more of the standards set forth in 11 U.S.C. §§ 363(f)(1)-(5) has been satisfied.
>
> . . . .
>
> The Purchaser would not have entered into the sale Agreement to purchase the Assets, and will not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estate and their creditors, if the Asset Sale to the Purchaser was not free and clear of all liens and interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the liens or interests, including, without limitation, the Retained Liabilities.

(Sale Order ¶¶ B & N.) The Sale Order also contains several decretal paragraphs limiting the successor liability of TMI and TME arising from the sale of the Debtors' assets, including that:

> Neither the purchase of the Assets by the Purchaser, nor the transactions contemplated hereby, will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of any federal, state or local . . . tax, labor . . . law, rule or regulation . . . with respect to Debtors' liability under such law, rules, regulations or doctrines. In addition, except as expressly provided in the Sale Agreement, the Purchaser does not acquire or assume any of the Debtors' . . . liabilities, . . . and in no event shall the Purchaser (a) be deemed the successor of the Debtors, (b) have, de facto or otherwise, merged with or into the Debtors or (c) be a mere continuation of the Debtors or the enterprises of the Debtors.
>
> . . . .
>
> Upon the closing of the Asset Sale, pursuant to 11 U.S.C. § 363(f), as of the Closing and pursuant to the terms of the Sale Agreement, the transfer of the Assets to the Purchaser will be a legal, valid, enforceable, and effective transfer of the Assets, and will vest the Purchaser with all right, title, and interest of the Debtors in the Assets *free and clear of all liens, claims, encumbrances and interests*, including, but not limited to: . . . (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing . . . .
>
> . . . .
>
> This Court shall and hereby does retain sole and exclusive jurisdiction to

determine any dispute, issue or other matter arising in connection with the Asset Sale or this Order.

(Sale Order ¶¶ 9, 10, 34 (emphasis added).)

Subsequent to the purchase, TIE and TME were notified by the DoL that a determination had been made that there had been a transfer of a business from the Debtors to TIE and TME under New York Labor Law § 581(4)(a). (Aff'd in Supp. of Mot. for Recons. Exs. D, E, ECF No. 606.) As a result, Debtors' experience ratings for purposes of calculating unemployment insurance tax premiums were transferred to TIE and TME, resulting in their ratings being significantly higher than they would have been based upon new employer status. The effect of this adjustment was that their unemployment insurance tax premiums also increased. The DoL has not attempted to collect its priority claim against Tougher Industries, Inc. from TIE or TME.

Pursuant to Article 18 of New York State Labor Law, TIE and TME each requested a hearing with an Administrative Law Judge ("ALJ") in order to challenge the DoL's transfer of the Debtors' experience ratings to them. TIE and TME failed to appear at the hearings leading the ALJ to render a decision on November 19, 2009, finding them in default based upon their nonappearances. (Aff'd in Supp. of Mot. for Recons. Ex. F.) The ALJ sustained the DoL's initial determinations, however, TIE and TME were granted leave to apply to reopen the decisions within a reasonable time.

Approximately three and a half months later, by letter dated March 1, 2010, TIE and TME requested that the default decisions handed down by the ALJ be reopened. TIE, TME, and the Commissioner of Labor appeared at the hearing and testimony was taken. On May 3, 2010, the ALJ issued decisions denying the requests to reopen its original decisions finding that TIE

and TME unreasonably delayed in applying to reopen the default decisions. (Aff'd in Supp. of Mot. for Recons. Ex. G.) As a result, the DoL's determinations remained in effect. TIE and TME appealed the ALJ's decisions to the Unemployment Insurance Appeal Board. The Appeal Board affirmed the decision of the ALJ and denied the applications to reopen the ALJ's original decisions.[1] (ECF No. 671.)

Meanwhile, on January 29, 2010, TIE filed a motion asking the court to clarify its rights and remedies as a purchaser of Debtors' assets under the Sale Order. (Motion for Clarification, ECF No. 543.) Specifically, TIE requested that the court clarify that its purchase of the Debtors' assets did not make it a "successor" to the Debtors and, thus, neither state nor federal authorities may calculate or collect TIE's unemployment insurance tax liabilities based on an "experience" rating linked to the Debtors. No pleadings were filed nor appearances made in opposition to TIE's motion. As a result, an order was entered on February 24, 2010, granting the relief as requested. Although the motion made specific references to actions taken by the DoL, it was not served with the motion.

On July 23, 2010, TME filed a similar motion seeking to clarify its rights and remedies, as an affiliate of TIE, and requested that the February 24, 2010 order be extended to TME. (Motion for Clarification, ECF No. 593.) The motion by TME also referenced actions take by the DoL and sought to prohibit the DoL from using Tougher's experience rating in calculating TNE's unemployment insurance tax liabilities.

---

[1] While the administrative proceedings upheld the DoL's assignment of the Debtors' experience ratings to TIE and TME based on a transfer of the organization, trade or business from the Debtors, the issue of whether the Debtors' assets were transferred free and clear of this interest by virtue of the Sale Order was not addressed.

5

TME filed an application to shorten the notice period and to limit the parties who needed to be noticed with the motion. The court granted the application and directed that the DoL be served with the motion "by serving the person or office upon whom process is prescribed to be served under CPLR § 307."[2] (ECF No. 596.) TME's certificate of service indicated that on July 27, 2010, the DoL was served in care of the Office of the Attorney General, at the Justice Building in Albany, by delivery to Ronald W. House. (ECF No. 597.) Mr. House is a clerical employee who works in the records room of the Attorney General's Office in Albany. No pleadings were filed nor appearances made in opposition to TME's motion. Thus, an order was entered on August 2, 2010 granting the relief as requested.

The Clarification Orders prepared by counsel for TME and TIE provide:

ORDERED, that the purchase of assets pursuant to the Order Approving Sale of Assets allowed on November 20, 2007 did not make [TIE/TME] a successor to the Debtors; and

ORDERED, that neither state, federal, nor local authorities may treat nor consider [TIE/TME] as a successor to the Debtors based, in whole or in part, on [TIE's/TME's] purchase of assets of the Debtors pursuant to the Order; and

ORDERED, that neither state, federal, nor local authorities may base or calculate [TIE's/TME's] unemployment taxes or collect any debt thereon, on an 'experience' rating

---

[2] Civil Procedure Law and Rules 307 provides, in part:
2. Personal service on a state . . . agency, which shall be required to obtain personal jurisdiction over such an . . agency, shall be made by (1) delivering the summons to . . . the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to . . . the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section. Service by certified mail shall not be complete until the summons is received in a principal office of the agency and until personal service upon the state the state in the manner provided by subdivision one of this section is completed. . . . The chief executive officer of every such agency shall designate at least one person, in addition to himself or herself, to accept personal service on behalf of the agency.
N.Y. C.P.L.R. 307 (McKinney 2010).

or any other factors related to or linked to the Debtors; and further

ORDERED, that neither state, federal, nor local authorities nor private insurers may base or calculate [TIE's/TME's] workers compensation rate or collect any debt based thereon, on any past injury or claims experience rating or any other factors related to or linked to the Debtors.

(Orders to Clarify Scope of Order Approving Sale of Debtor's Assets (the "Clarification Orders"), ECF Nos. 554, 600.)

The DoL moved for reconsideration of the Clarification Orders and requested that the court rescind the orders to the extent they pertain to the unemployment insurance tax rates and liabilities of non-debtors TIE and TME. At the conclusion of oral argument, the court found that the Motions for Clarification filed by TIE and TME were not properly served upon the DoL pursuant to Federal Rule of Bankruptcy Procedure 7004 despite the fact that TIE and TME ultimately sought to enforce the Clarification Orders against the DoL. Pursuant to the court's instructions, the DoL submitted an Interim Order vacating the Clarification Orders with respect to the DoL. (ECF No. 621.) The court then took under advisement the issues originally raised in the Motions for Clarification filed by TIE and TME based upon submissions made by TIE, TME, and the DoL.

**Argument**

TIE and TME contend that, pursuant to the terms of the Sale Order, their purchase of the Debtors' assets did not make either of them a "successor" to the Debtors and, thus, neither state nor federal authorities may calculate or collect unemployment insurance tax liabilities based on an "experience" rating linked to the Debtors. It is the position of TIE and TME that they purchased the Debtors' assets free and clear of liens, encumbrances, and other interests and that a

vital part of the purchase and sale transaction was that they would not be liable for any liens or interests of the Debtors, nor would they be considered a successor to the Debtors. TIE and TME argue that the State's agencies, including the DoL, are bound by the court's findings and decrees in the Sale Order, specifically that TIE and its affiliates, including TME, have no successor liability to the Debtors. Additionally, they assert the Tax Injunction Act does not apply to this matter as they are not seeking to enjoin, suspend, or restrain the State's collection of taxes. To the extent the DoL seeks reconsideration of the Sale Order, TIE and TME contend such is untimely under Federal Rule of Civil Procedure 60(c), applicable here by Federal Rule of Bankruptcy Procedure 9024.

While the DoL acknowledges that § 505 of the Bankruptcy Code permits the court to determine the tax liability of a debtor, it asserts that TIE and TME are non-debtors. Thus, the DoL argues that the court lacks subject matter jurisdiction to review TIE's and TME's unemployment insurance tax liabilities based on their payroll for periods subsequent to their purchase of Tougher's assets. The DoL further argues that the Tax Injunction Act, 28 U.S.C. § 1341, also prevents the court from deciding this matter. Relying upon *In re Victory Markets, Inc.*, the DoL contends that the position advanced by TIE and TME was addressed and rejected by another court in this district.

## Discussion

### *Subject Matter Jurisdiction*

As a preliminary matter, the DoL contends that the court does not have subject matter jurisdiction to adjudicate the Motions for Clarification before it. The court disagrees. The dispute before the court is based on purported rights established in the Sale Order. More

specifically, whether the right to assess TIE and TME unemployment insurance tax liabilities based upon the Debtors' experience ratings was an interest avoided under the Sale Order, which was entered by the court in exercise of its core jurisdiction. 28 U.S.C. § 157(b)(2)(N) ("[O]rders approving the sale of property" are core bankruptcy proceedings.) The court is being asked to interpret and enforce the Sale Order, and bankruptcy courts have jurisdiction to enforce and interpret their own prior orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 2205 (2009) (citation omitted). This is especially true when a sale order conveys assets free and clear of claims and interests and a party attempts to assert successor liability in another court. *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005) (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002)); *In re Motors Liquidation Co.*, 457 B.R. 276, 291 (Bankr. S.D.N.Y. 2011). Additionally, when the Sale Order was issued, the court explicitly retained jurisdiction to construe and enforce its terms, which is common. *In re Motors Liquidation Co.*, 457 B.R. at 286-87 ("'Retention of Jurisdiction' provisions appear in the great bulk of bankruptcy sale orders, as disputes not infrequently arise after section 363 sales, requiring the bankruptcy court to construe or enforce those orders.")

The DoL relies upon § 505(a)(1) and the Tax Injunction Act to support its position that the court lacks subject matter jurisdiction. Section 505(a)(1) gives the court the power to "determine the amount or legality of any tax . . . whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1). The court's jurisdiction, however, extends only to determination of the tax liabilities of debtors. *U.S. v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir. 1986); *Brandt-Airflex Corp. v. L.I. Trust Co. (In re Brandt-Airflex Corp.)*,

843 F.2d 90, 96 (2d Cir. 1988) ("[A] literal reading of § 505(a) could lead to absurd results . . . Section 505(a) was certainly not intended to allow bankruptcy courts to determine the validity of literally *any* tax, no matter who owes it."). The Tax Injunction Act provides that the district court, or the bankruptcy court by referral, "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The court is not being asked to determine the amount or legality of the tax liabilities of TIE and TME, nor is the court being asked to enjoin, suspend, or restrain the assessment, levy or collection of unemployment insurance tax premiums from TIE and TME. TIE and TME are not disputing that they are subject to unemployment insurance tax premiums. Rather, they seek a determination of whether their free and clear purchase of the Debtors' assets pursuant to the Sale Order extinguished the DoL's right to transfer the Debtors' experience ratings to TIE and TME instead of applying a new employer rate.

The DoL's reliance on *In re Victory Markets, Inc.*, 263 B.R. 9 (Bankr. N.D.N.Y. 2000), is misplaced. *In re Victory Markets, Inc.* dealt with a confirmed liquidating Chapter 11 plan that provided for the formation of a limited liability company (the "LLC") that took by assignment all the assets and liabilities of the debtor. 263 B.R. at 12. Three years later, the debtor and the LLC commenced an adversary proceeding challenging the state's transfer of the debtor's experience rating to the purchasers. *Id.* at 16. The bankruptcy court dismissed the proceeding based upon lack of jurisdiction. However, unlike the instant case, there was no order transferring the debtor's assets free and clear of "any interest in such property" pursuant to a sale under § 363(f).

*The § 363(f) Sale Order*

New York Labor Law provides for an experience rating system to calculate an employer's contributions to the state's unemployment compensation fund. Under this system, employers have their unemployment tax rate determined annually based upon their prior employment and unemployment experience. N.Y. Lab. Law § 581. The statute also provides that where a business is transferred from one employer to another, the former employer's unemployment insurance rating shall also be transferred. N.Y. Lab. Law § 581(4)(a). Essentially, the past experience of the prior employer, is used to project future losses of the successor employer.

Section 363(f) allows a trustee to sell property "free and clear of *any interest* in such property," if one of the five listed conditions is met. 11 U.S.C. § 363(f) (emphasis added). The court made a finding in the Sale Order that the sale of the Debtors' assets was free and clear because, in each case, one or more of the standards set forth in § 363(f)(1)-(5) had been satisfied.

The outcome of the Motions for Clarification turn on the meaning of "interest" in § 363(f), which is not defined in the Code. A narrow reading of the statute limits the phrase "interest in such property" to in rem interests. *Fairchild Aircraft Corp. v. Cambell (In re Fairchild Aircraft Corp.)*, 184 B.R. 910, 917-18 (Bankr. W.D. Tex. 1995), *vacated on other grounds*, 220 B.R. 909 (Bankr. W.D.Tex. 1998). The Second Circuit, along with the Third, Fourth and Seventh Circuits, and the First Circuit BAP, however, have applied a more expansive interpretation to include not only *in rem* interests in property, but also other obligations that may "arise from the property being sold." *In re Grumman Olson Industries, Inc.*, 467 B.R. 694, 702-3 (quoting *In re Chrysler, LLC*, 576 F.3d 108, 126 (2d Cir. 2009), *vacated as moot sub. nom., Ind. State Police Pension Tr. v. Chrysler, LLC*, ___U.S.___, 130 S.Ct. 1015 (2009)); *PBBPC, Inc. v.*

11

*OPK Biotech, LLC (In re PBBPC, Inc.)*, 484 B.R. 860 (1st Cir. BAP 2013); *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003) (The term "any interest" in § 363(f) includes a lessee's possessory interest in a Chapter 11 debtor's real property); *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288 (3d Cir. 2003) (Debtors' assets could be sold free and clear of rights of flight attendants under a travel voucher program that the debtor had established in settlement of a sex discrimination action); *United Mine Workers of America 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996) (Coal mine operators could sell their assets free and clear of their obligations to a benefits plan and fund under the Coal Act).

In *Chrysler*, the Second Circuit, employing a broad reading of "any interest" in § 363(f) held that the bankruptcy court was permitted to authorize the sale of substantially all of the debtor's automobile manufacturing assets pursuant to § 363(f) free and clear of claims arising from the property being sold, including liability for tort claims. 576 F.3d at 126; *see In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009).

The *Chrysler* holding was based in part on the Circuit Court's ruling that:

> [i]t is the transfer of Old Chrysler's tangible and intellectual property to New Chrysler that could lead to successor liability (where applicable under state law) in the absence of the Sale Order's liability provisions. Because appellants' claims arose from Old Chrysler's property, § 363(f) permitted the bankruptcy court to authorize the Sale free and clear of appellants' interest in the property.

*Id.*

In a case involving similar facts to the one *sub judice*, the Sixth Circuit applied a more restrictive reading of the phrase "any interest" in §363(f). *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132 (6th Cir. 1991), *cert.*

*dismissed*, 503 U.S. 978 (1992). The Sixth Circuit's view was that an "interest" attaches "to the property so as to cloud its title." *Id.* at 1147. Thus, it was held that the debtor's experience rating was not an "interest" encompassed by § 363(f). As a result, the experience rating survived the sale of the debtor's asset, and could be assigned by the Michigan Employment Security Commission (MESC) to the debtor's successor despite the debtor's assets being sold free and clear pursuant to § 363(f). *Id.* at 1146. In *Wolverine*, the debtor's confirmed Chapter 11 plan addressed MESC's allowed claim and incorporated a letter of intent providing for the "free and clear" sale of the debtor's assets. The *Wolverine* court noted that the debtor's plan of reorganization did not contemplate the type of interest at issue, namely debtor's experience rating. *Id.* Here, the DoL's application of higher experience ratings to TIE and TME is the direct result of their purchase and subsequent ownership of the Debtors' assets. Additionally, the Sale Order provides TMI and TME shall not be deemed a successor in any respect to the Debtors' businesses within the meaning of any federal, state or local tax or labor law, rule or regulation with respect to Debtors' liability under such law, rules, regulations or doctrine, and that the assets were being sold free and clear of all interests, including those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the assets prior to the closing.

More recently, the First Circuit BAP came to the opposite conclusion and held that the right of the Massachusetts Department of Workforce Development, Division of Unemployment Assistance, to treat a purchaser of substantially all of the assets of Chapter 11 debtor as "successor employer" to which debtor's experience rating could be imputed to determine purchaser's unemployment insurance contribution fell within "any interest," of which debtor's

13

assets could be sold free and clear. *In re PBBPC, Inc.*, 484 B.R. 860. Their holding was based in part on the finding that:

> [T]he transfer of an employer's contribution rate to a successor asset purchaser is really an attempt to recover the money that the predecessor employer would have paid if it had continued in business. The liability for the increased rate thus follows any purchase of substantially all of the assets of an employer. The transfer of those assets alone, not the continuation of the Debtor's business, is sufficient to trigger the imposition of successor liability on a purchaser.

*Id.* at 869. The court adopts the First Circuit BAP's holding that § 363(f) should be read broadly and encompasses all obligations that may flow from ownership of the property. This conclusion is in line with the expansive reading of the term "any interest" in 363(f) adopted by the Second Circuit.

This holding is also consistent with the purpose of bankruptcy sales, which is to maximize the value of the asset and, thus, the dividend to creditors. *Grumman Olson Indus., Inc. v. Frederico (In re Grumman Olson Indus., Inc.)*, 445 B.R. 243,249 (Bankr. S.D.N.Y. 2011 (citing *Douglas v. Stamco*, 363 Fed. Appx. 100, 102 (2d Cir. 2010)), *aff'd*, 467 B.R. 694 (S.D.N.Y. 2012)). The possibility of transferring assets free and clear of successor liability was a crucial inducement to TIE and TME entering into the Asset Purchase Agreement with the Trustee and, ultimately, purchasing the Debtors' assets. If the sale had not been free and clear, TIE and TME would presumably have paid less for the assets.

## Conclusion

Based upon all of the foregoing, the court concludes the right of the DoL to tax TIE and TME, as successor to the Debtors, at the Debtors' experience rating, is an "interest" in property of the bankruptcy estate, of which Debtors' assets could be sold free and clear of. Thus, the sale

of the Debtors' assets to TIE and TME was free and clear of the Debtors' experience ratings.

Motion granted.

It is SO ORDERED.

March 27, 2013 /s/ Robert E. Littlefield, Jr.
Robert E. Littlefield, Jr.
Chief United States Bankruptcy Judge